**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Richard A. WEISMAN, Jr.,**
**Defendant-Appellant.**

**No. 82–1712.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 13, 1984.

Decided June 12, 1984.

Rehearing and Rehearing In Banc
Denied July 20, 1984.

David A. Novoselsky, Chicago, Ill., for defendant-appellant.

D. McCarty Thornton, Asst. U.S. Atty., Gerald D. Fines, U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, and ESCHBACH and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

This is an appeal from a conviction following a jury trial in which the defendant was found guilty on various counts of mail fraud, wire fraud, and conspiracy. The defendant argues that he did not receive a fair trial because the jury was exposed to extraneous materials that may have influenced its verdict, and because the prosecution was permitted to introduce evidence prejudicial to the defendant but unrelated to the offenses charged in the indictment. For the reasons stated below, we affirm the defendant's convictions.

## I.

On September 23, 1981, the defendant Richard Weisman was charged in a twenty-nine-count indictment with various counts of mail fraud, wire fraud, and conspiracy, in violation of 18 U.S.C. §§ 371, 1341 and 1343 (1982). Two of these counts were later dismissed. Also charged in this indictment were Robert E. May, Barry Kent, Jerry Willson, Woodruff Thompson, and Adrian Weisman, the defendant's son. All of these men were employees of Chemical Dynamics Corporation, of which the defendant was president. Chemical Dynamics was in the business of selling fertilizer and various other products. It marketed these products by selling local "distributorships" to businesses, which in turn were supposed to be able to sell the products to dealers. The essence of the government's charge against Weisman and his codefendants was that these distributorships were sold pursuant to an elaborate scheme involving fraudulent sales techniques, including knowing misrepresentations about the cost-effectiveness of the products. According to the government, Weisman and his codefendants knew that a distributor of Chemical Dynamics products could not possibly make a profit, and, in fact, the distributors targeted by Chemical Dynamics during the period charged in the indictment suffered significant financial losses as a result of their dealings with Chemical Dynamics.

The trial of Richard Weisman and his codefendants (except Robert E. May, who was hospitalized due to illness) began on January 22, 1982. On that same day, Woodruff Thompson's case was severed from the others. Three days later, on January 25, Jerry Willson pled guilty to two counts of wire fraud and agreed to testify for the prosecution. On February 10, 1982, Barry Kent pled guilty to mail fraud, and he also agreed to testify for the prosecution. On March 2, 1982, with the nearly six-week trial almost at its end, Adrian

Weisman pled guilty to mail fraud. On March 4, the jury found Richard Weisman, the only remaining defendant, guilty on all twenty-seven counts. After losing a post-trial motion for a new trial, Weisman was sentenced to a total of fifteen years in prison and five years of probation, and, as a special condition of probation, he was ordered to make restitution in the amount of $270,532.45. He then brought this appeal.

## II.

The defendant Weisman contends first that the trial judge should have declared a mistrial because the jury's verdict was "tainted" by the jury's exposure to material that was extraneous to the proceedings in court. This material consisted of a newspaper article concerning the trial, which was brought into the jury room by a juror, and the transcript of comments by a federal judge made during a separate proceeding involving Weisman, which inadvertently was given to the jury to peruse during its deliberations.

### A. The newspaper article

During the morning of March 1, 1982, shortly before closing arguments, one of the jurors brought into the jury room a clipping of a newspaper article concerning the defendant's trial. Upon learning of this occurrence the following morning, the district court judge brought each juror separately into the courtroom and questioned him on her about the incident.[1] From this questioning, the judge learned that four of the jurors had read the article, though two of these four had only glanced at it in a cursory fashion. According to these jurors, the only discussion of the contents of the article revolved around a reference to Woodruff Thompson, a name that they had not recognized from the trial. The remainder of the jurors stated that while they were aware of the presence of

---

**1.** The juror who brought the newspaper clipping into the jury room the day before had been excused that day after complaining of illness, and she was not questioned about the incident.

We think it would have been better practice for the district court to contact her and question her about the incident, but we do not find that the court's failure to do so was prejudicial error.

the clipping in the jury room, they had not read the article and had not discussed the contents of the article with their fellow jurors. However, several jurors stated that there was some discussion of the incident itself, and that the juror who had brought the clipping into the jury room was criticized for disregarding prior admonitions by the trial judge to ignore publicity concerning the trial. In response to a question from the trial judge, each of the jurors, including those that had read the article, indicated unequivocally that nothing stated in the article or said about the article would influence his or her decision. Later that day, before giving the jury instructions, the trial judge again admonished the jurors to decide the case only on the basis of the evidence introduced at trial, and not on the basis of any publicity to which they might have been exposed. In addition, the judge again asked the jurors if they believed they would decide the case only on the evidence, and again the jurors indicated that they would.

■ On the basis of its inquiry into the effect of the article on the jurors, and on its own reading of the newspaper article, the district court found that the defendant was not prejudiced, and it denied the defendant's motion for a mistrial. On this appeal, the defendant argues that a mistrial should have been granted, because the article informed its readers that Adrian Weisman had entered into a plea agreement, and this was prejudicial to the defendant's case.[2] The defendant also argues that he was entitled to a mistrial because the incident involving the newspaper clipping upset many of the jurors, making them unable to pay attention to the defendant's closing argument and thus perhaps unable to render a fair verdict.

■ It is a fundamental principle of our jurisprudence that "the jury's verdict must be based on evidence received in open court, and not from outside sources." *Sheppard v. Maxwell*, 384 U.S. 333, 351, 86 S.Ct. 1507, 1516, 16 L.Ed.2d 600 (1966). Nevertheless, a new trial is not required automatically whenever a jury is exposed to material not properly in evidence. Rather, a new trial is required only when there is a "reasonable possibility" that the material affected the jury verdict. *United States v. Bruscino*, 687 F.2d 938, 940 (7th Cir.1982) (en banc). Each case "must turn on its special facts," *Marshall v. United States*, 360 U.S. 310, 312, 79 S.Ct. 1171, 1172, 3 L.Ed.2d 1250 (1959), and in each case the crucial factor is "the degree and pervasiveness of the prejudicial influence possibly resulting" from the jury's exposure to the extraneous material. *United States v. Solomon*, 422 F.2d 1110, 1118 (7th Cir.1970). The trial court has the primary responsibility for making this determination of prejudice, and an appellate court must review the trial court's determination under an "abuse of discretion" standard. *United States v. Bruscino*, 687 F.2d at 940.

■ In the instant case, we agree with the district court's finding that there is no "reasonable possibility" that the newspaper article affected the jury's verdict. The article's reference to a codefendant's guilty plea, while certainly the type of evidence that might be prejudicial under some circumstances, *see Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) (admission of codefendant who did not take stand violated defendant's sixth amendment rights), most likely was not prejudicial in this case. One reason for this is that Adrian Weisman's guilty plea was not inconsistent with the defendant Richard Weisman's theory of defense. Our review of the record reveals that Richard Weisman's primary theory of defense was that he had no personal knowledge of any

---

**2.** The defendant also argues that he was prejudiced because the article mentioned that the defendant's company had changed its name and had moved to Florida, where it was marketing a new line of products. However, because this information was already contained in the indict-

ment, Appellant's Appendix at 33, and because the article did not state or imply that the defendant was involved in any wrongdoing in Florida, we find this portion of the article to be clearly harmless.

fraudulent sales practices engaged in by Chemical Dynamics employees.[3] Where, as here, a defendant claims that he personally was ignorant of the criminal activity engaged in by others, the guilty plea of one of the others is not likely to inculpate him and thus is not likely to prejudice his case. *See United States v. Alley*, 661 F.2d 718, 721 (8th Cir.1981). *See also United States v. Bruscino*, 687 F.2d at 942 (news article informing jury of defendant's alleged co-conspirators' guilty pleas did not prejudice defendant where defendant's theory of defense was that the co-conspirators had committed the crime).

The defendant argues, however, that in this case his codefendant's guilty plea did implicate him in the fraudulent scheme because the codefendant was his own son. We recognize that the fact that the defendant's son was involved in the illegal scheme may tend to make the defendant's own defense based on lack of personal knowledge somewhat less believable. However, we find that since the jurors already had heard ample evidence of Adrian Weisman's involvement in the scheme, their possible knowledge of the fact that Adrian Weisman actually had pled guilty would add little, if anything, to the prosecution's case against the defendant.[4] Improperly admitted evidence that is essentially duplicative of properly admitted evidence often is held harmless. *See, e.g., Harrison v. Owen*, 682 F.2d 138 (7th Cir.1982) (improper admission of coerced confession held harmless where another "practically identical" confession was properly admitted); *United States v. D'Andrea*, 495 F.2d 1170 (3rd Cir.1974) (jurors' reading of newspaper article reporting defendant's indictment on a different charge held harmless where facts giving rise to the indictment had already been admitted properly into evidence). *Cf. Schneble v. Florida*, 405 U.S. 427, 430, 92 S.Ct. 1056, 1058, 31 L.Ed.2d 340 (1972) (improper admission into evidence of codefendant's confession held harmless where its prejudicial effect was insignificant in comparison to the effect of properly admitted evidence of guilt).

Several other facts militate in favor of our finding that the jurors' possible knowledge of Adrian Weisman's guilty plea amounted to harmless error. First, each of the jurors independently stated that there was no discussion of the contents of the newspaper article, other than a brief discussion of Woodruff Thompson among the few jurors who read the article. Thus, this is not a case in which one or more jurors used extraneous material to attempt to influence the votes of others. *Compare United States v. Thomas*, 463 F.2d 1061, 1063 (7th Cir.1972). Second, because the jurors saw the news article at the end of

---

**3.** It appears from the record that the defendant also contended that Chemical Dynamics's sales practices were not fraudulent, but merely "hard sell." *See* Tr. at 4469. We find that the jurors' possible knowledge of Adrian Weisman's guilty plea did not significantly detract from this line of defense, for two reasons. First, the determination of whether the sales practices were fraudulent is the type of factual determination that the jury easily could be expected to make on the basis of all the evidence, without regard to Adrian Weisman's guilty plea. Second, even assuming arguendo that the jury might consider the admitted guilt of a codefendant relevant to this determination, codefendants Willson and Kent already had pled guilty and testified for the prosecution. Any impact that Adrian Weisman's plea might have had after this would have been de minimis.

**4.** The government argues that the article's reference to Adrian Weisman's guilty plea was harmless because it was obvious from Adrian Weisman's sudden absence at the defense table that he had pled guilty. Under some circumstances, it might be appropriate to draw this sort of conclusion. *See United States v. Gutman*, 725 F.2d 417, 421–22 (7th Cir.1984). However, we are unwilling to rest our decision on this ground. Although we recognize that it is inevitable that some defendants in multiple-defendant trials will plead guilty during trial and that a new trial can not be granted every time that this occurs, the sudden conspicuous absence at trial of a codefendant can be a serious matter that must be handled delicately so as to minimize the possibility of prejudice. *See United States v. Phillips*, 640 F.2d 87, 90–91 (7th Cir.1981) (cautionary instructions regarding codefendant's sudden absence from trial cured any possible prejudicial effect). We would hesitate to detract from the seriousness of the matter by speculating about what the jury had inferred from the codefendant's sudden absence and then resting our decision on this uncertain ground.

the trial, there was absolutely no risk that the contents of the article caused them to prejudge the case before hearing all the evidence. *See United States v. Bruscino*, 687 F.2d at 943 (Eschbach, J., dissenting); *United States v. D'Andrea*, 495 F.2d at 1173. Third, when the trial judge questioned the jurors about the contents of the article, nobody mentioned the reference to Adrian Weisman's guilty plea. This is some indication that the reference did not make a significant impression on them, assuming they saw it at all. Fourth, we find it noteworthy, as have other courts, that the district court judge took appropriate steps to ensure the integrity of the trial. The judge gave the proper admonitions with respect to publicity about the trial. Although these admonitions ultimately were disregarded, it was not through any fault of the court. *Compare Goins v. McKeen*, 605 F.2d 947, 953 (6th Cir.1979). Immediately upon hearing of the introduction of the newspaper clipping into the jury room, the judge conducted an inquiry into the possible prejudicial effect of the article, as required in this circuit. *United States v. Thomas*, 463 F.2d at 1065. Finally, the judge properly instructed the jury to decide the case only on the evidence. *See United States v. Phillips*, 640 F.2d at 91 n. 7; *United States v. Alley*, 661 F.2d at 721.

■ As we have indicated, the defendant also argues that a mistrial should be declared because the incident involving the newspaper clipping upset the jurors and thus may have prejudiced his case. Our review of the record reveals that the district court judge was well aware of this possibility, *see* Tr. at 4597, and that he determined that the effect of the incident on the jury would not prejudice the defendant. Because the district court was in a much better position than we are now to make this sort of determination, *see United States v. Bruscino*, 687 F.2d at 941, and because the record contains no strong indication that the district court erred in this matter, we hold that the incident involving the newspaper clipping does not constitute grounds for a mistrial.

B. The remarks of a judge in another proceeding

■ During the course of the trial, the prosecution sought to introduce certain material relating to a guilty plea entered by the defendant in 1980 on behalf of the Chemical Dynamics Corporation before the United States District Court for the Western District of Wisconsin. The prosecution in Wisconsin was for fraudulent activity similar to that for which the defendant was indicted in the instant case. The prosecution's purpose in introducing this material, which included the transcript of the Wisconsin proceeding, was to help rebut the defendant's claim that he had no personal knowledge of any fraudulent activity perpetrated by Chemical Dynamics employees. Most of this material was admitted over the defense's objection. However, when the prosecution sought to read into evidence certain remarks made by the trial judge in the Wisconsin proceeding, the district court refused its request. Later it was discovered that the full transcript from the Wisconsin proceeding, including the comments of the trial judge that had been excluded from evidence, had been given to the jury to peruse during its deliberations. The defendant blames the prosecution for this occurrence, and argues that the improper introduction into evidence of the judge's comments caused him prejudice and constitutes grounds for a mistrial. The prosecution faults the defendant for allowing the inadmissible material to reach the jury and argues that in any event the admission into evidence of the judge's remarks was harmless error.

We need not engage in an extended discussion of fault with regard to the failure to redact the inadmissible comments. It is clear that it was error, and that both the prosecution and the defense were less than careful in allowing the remarks to reach the jury. The more important point is that we find the incident to be harmless error; there is no "reasonable possibility" that the material affected the jury verdict. *United States v. Bruscino*, 687 F.2d at 940. The gist of the judge's remarks, which were

made during the imposition of a fine, was that Chemical Dynamics had committed a serious crime, and that the maximum fine was needed in order to deter others from committing the same or similar crimes.[5] Nothing in the judge's remarks implicated the defendant personally, or in any way added to the prosecution's case against the defendant. Thus, the district court properly concluded that the error was harmless.

### III.

The defendant also argues that he is entitled to a new trial because the prosecution was permitted to introduce evidence of matters relating to the defendant's past that were not the subject of the indictment. The essence of the defendant's argument is that the prosecution engaged in "general character assassination," Appellant's Brief at 40, and that the evidence relating to the defendant's past should have been excluded as more prejudicial than probative under Rule 403 of the Federal Rules of Evidence. The defendant gives us several examples of evidence that should have been excluded as more prejudicial than probative: evidence concerning the earlier proceeding against Chemical Dynamics Company in federal court in Wisconsin; testimony of Chemical Dynamics employees and other evidence relating to previous investigations of Chemical Dynamics; and testimony of Chemical Dynamics employees as to statements made by the defendant concerning his "fears" of being investigated by the Federal Trade Commission.

While we are mindful that a prosecutor's excessive concentration on pri-

or acts of a defendant in order to impugn the defendant's character can amount to prejudicial error, *see United States v. Dow*, 457 F.2d 246 (7th Cir.1972), we are satisfied that this is not such a case. In this case, the evidence about which the defendant complains was introduced to rebut the defendant's contention that he had no personal involvement in or knowledge of any fraudulent activities perpetrated by Chemical Dynamics employees. The evidence tended to show, at the very least, that it was unlikely that the defendant was not aware of what was going on around him. Thus, the evidence was probative on the question of the defendant's knowledge. This is an entirely proper use of such evidence, *see United States v. Peskin*, 527 F.2d 71, 84 (7th Cir.1975), particularly where, as here, the defendant's primary theory of defense was lack of personal knowledge. As long as the probative value of the evidence is not outweighed by its prejudicial effect, the evidence is admissible. *Id.* This weighing of the evidence is a matter addressed to the discretion of the trial court. *United States v. Grabiec*, 563 F.2d 313, 317 (7th Cir.1977). In this case, we find no abuse of discretion.

Finally, the defendant argues that there was insufficient evidence to support the verdict against him. We find this argument to be without merit, and we affirm the defendant's convictions.

**5.** The full text of the judge's remarks is as follows:

All right. I am prepared to impose a fine. I think, first of all, that it is appropriate to impose a fine despite the fact that restitution agreement has been reached between the prosecutor and the defendant in this matter. I think that this is the type of activity about which it is particularly necessary to show some kind of punishment that might help to deter others from entering into similar activities and victimizing persons in the State of Wisconsin or any where else. It unfortunately seems to be an all too prevalent form of

activity and one in which the state and federal government is not always able to act quickly enough to protect the people who are potential victims of this kind of franchising and distributorship fraud. It affects legitimate franchisers and distributors, but more importantly it affects people who have in some cases tied up savings they could not afford to lose and pin their hopes on these kinds of projects thinking that they could make money which they needed for various reasons.
I am prepared to impose the maximum fine in this case and I do impose that fine.
Appellee's Brief at 35.