In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3754

United States of America,

Plaintiff-Appellee,

v.

Ioanis V. Paneras,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 CR 380--Charles P. Kocoras, Judge.

Argued April 13, 2000--Decided July 28, 2000

Before Harlington Wood, Jr., Flaum, and Diane P. Wood,
Circuit Judges.

Flaum, Circuit Judge.  On February 11, 1999,
defendant Ioanis V. Paneras was convicted of mail
fraud in violation of 18 U.S.C. sec. 1341,
engaging in a prohibited financial transaction in
violation of 18 U.S.C. sec. 1957, wire fraud in
violation of 18 U.S.C. sec. 1343, and failing to
file income tax returns in violation of 26 U.S.C.
sec. 7203. The defendant now appeals, arguing
that the evidence was insufficient to establish
that he defrauded his alleged victims. In
addition, the defendant contends that the
district court erred in denying his motion for a
new trial and in calculating his sentence. For
the reasons stated herein, we affirm the
defendant's convictions and sentence.

I.  Background

In the summer of 1994, the defendant was hired
as the national sales manager for Global Chemical
Corporation ("Global") in Chicago, Illinois. At
the time Global hired the defendant, the company
had no sales staff and virtually no customers.
The company purportedly had three product lines,
including the chlorine replacement "Oxydyne,"
several household cleaning products, and an oil-
spill cleanup and oil pipeline drag reducer
product.

Immediately after being hired by Global, the defendant attempted to recruit distributors for the company's products. Although Global was a struggling start-up company, the defendant repeatedly told distributorship candidates that Global was a successful company that was closely affiliated with a large and wealthy middle eastern oil company. Through these efforts, the defendant managed to convince Jean Gaerlan of Los Angeles and Jerry Beougher of Phoenix to become distributors.

During the course of his dealings with Gaerlan and Beougher, the defendant made continuous false representations about Global's business status as a multi-national corporation. The defendant also requested money from Gaerlan and Beougher pursuant to their distributorship agreements. As a result, Gaerlan spent an estimated $250,000 on security deposits, payments for product shipments, and warehouse expenses. Beougher estimated he paid out $75,000 in reliance on the defendant's representations before he terminated his association with Global. Of the funds paid by Gaerlan and Beougher to Global, at least some of the money was converted to the defendant's personal use.

In addition to his activities on behalf of Global, the defendant also entered into a series of romantic relationships with six women between 1977 and 1998. During these relationships, the defendant frequently misrepresented himself as a wealthy businessman and promised to marry several of the women. The defendant also requested various advances of both cash and property from these women, usually justifying these requests by explaining that he was temporarily unable to access his assets. In total, these six women suffered losses of almost $250,000 through their relationships with the defendant.

The defendant was charged with various crimes arising from the conduct of both his business and personal affairs, including mail fraud, engaging in a prohibited financial transaction, wire fraud, and failing to file income tax returns. On February 11, 1999, the defendant was convicted by a jury on all counts. In calculating the defendant's sentence, the district court increased the offense level applicable to the defendant's crimes under both U.S.S.G. sec. 3A1.1 for the vulnerability of his victims and U.S.S.G. sec. 3B1.3 for an abuse of trust. The defendant was then sentenced to a total of seventy-one months in prison and a $6,000 fine, as well as a five-year term of supervised release. The defendant now appeals

II.  Analysis

The defendant challenges both his convictions and sentence, arguing that the evidence presented at trial was insufficient to support a finding that he committed fraud in his activities on behalf of Global and during his relationships with the six women who testified at trial. In addition, the defendant contends that the district court erred in refusing to grant his post-trial motion for a new trial, and in departing upward on his sentence based on the district court's conclusion that he defrauded vulnerable victims and that he abused a position of trust. We address each of the defendant's claims in turn.

A. Sufficiency of the Evidence

The defendant's challenge to the sufficiency of the evidence centers on his convictions for wire fraud and mail fraud. In order to find the defendant guilty of these crimes, the jury had to determine that the defendant engaged in his alleged schemes with an "intent to defraud." See United States v. Montani, 204 F.3d 761, 769 (7th Cir. 2000) (mail fraud); United States v. O'Brien, 119 F.3d 523, 532 (7th Cir. 1997) (wire fraud). An "intent to defraud" means that the defendant "act[ed] willfully and with specific intent to deceive or cheat, usually for the purpose of getting financial gain for [himself] or causing financial loss to another." United States v. Moede, 48 F.3d 238, 241 (7th Cir. 1995). However, "[b]ecause direct evidence of a defendant's fraudulent intent is typically not available, specific intent to defraud may be established by circumstantial evidence and by inferences drawn from examining the scheme itself which demonstrate that the scheme was reasonably calculated to deceive persons of ordinary prudence and comprehension." United States v. LeDonne, 21 F.3d 1418, 1426 (7th Cir. 1994). In evaluating the defendant's sufficiency of the evidence claim, "[w]e consider the evidence in the light most favorable to the prosecution, making all reasonable inferences in its favor, and affirm the conviction so long as any rational trier of fact could have found the defendant to have committed the essential elements of the crime." United States v. Masten, 170 F.3d 790, 794 (7th Cir. 1999) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

The defendant now admits that his actions were dishonest, but claims that he did not engage in any of his allegedly fraudulent activities with the specific intent necessary to support a conviction of either mail fraud or wire fraud. In support of this argument, the defendant contends that there was no direct evidence of an intent to

defraud, and that the evidence presented at trial failed to establish a sufficient connection between his lies and his financial benefit such that a specific intent to defraud could be inferred. However, after a review of the record, it is clear that the defendant has not met the heavy burden he bears in attempting to make a sufficiency of the evidence claim. As we noted previously, the defendant cannot prevail on his sufficiency of the evidence claim unless he demonstrates that no rational jury could have found that the circumstances of his crimes indicated an intent to defraud. See Masten, 170 F.3d at 794 (citing Jackson, 443 U.S. at 319). Instead of making such a showing, the defendant offers a competing characterization of the evidence which misapprehends both the role of the jury and our standard of appellate review. See United States v. Cueto, 151 F.3d 620, 633 (7th Cir. 1998).

It is the function of the jury to evaluate the credibility of witnesses and to weigh the evidence adduced at trial, see United States v. Moore, 115 F.3d 1348, 1364 (7th Cir. 1997), and we overturn a verdict "[o]nly when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt . . . ." Brandom v. United States, 431 F.2d 1391, 1400 (7th Cir. 1970). In this case, the circumstantial evidence presented at trial and the testimony of the victims demonstrate a pattern of deceit in the defendant's business activities and in his personal life that a rational jury could infer was part of a scheme designed to defraud. Moreover, the evidence clearly establishes that the defendant benefitted financially from his relationships with the Global distributors and the women with whom he was romantically involved, and that these benefits were contemporaneous with his misrepresentations. This evidence is more than adequate to establish the defendant's intent to defraud beyond a reasonable doubt, and we therefore conclude that the defendant's sufficiency of the evidence claim has no merit.

B.  The Defendant's Motion for a New Trial

The defendant next contends that the district court erred in denying his post-trial motion for a new trial. In his motion, the defendant alleged that on February 10, 1999, David Huey, one of the jurors and a professional artist, created a cartoon depicting his perception of the defendant and the events described at trial. Huey then shared this cartoon with the other jurors during deliberations. According to the defendant, Huey's actions in creating and sharing this cartoon

constitute juror misconduct that introduced extraneous and prejudicial material into the deliberation process and consequently deprived the defendant of his right to a fair trial. The defendant contends that the appropriate remedy for this juror misconduct is a new trial, and that the district court erred in refusing to grant one.

"A criminal defendant in our system has a right to be tried on the basis of the evidence admitted at his trial, and this right may be violated if the jury gets access to extra-record evidence . . . even if that access is not the result of any prosecutorial misconduct." United States v. Bruscino, 687 F.2d 938, 940 (7th Cir. 1982) (en banc). "Nevertheless, a new trial is not automatically required whenever a jury is exposed to material not properly in evidence." United States v. Sababu, 891 F.2d 1308, 1333 (7th Cir. 1989). Each case turns on its own facts, and on "the degree and pervasiveness of the prejudicial influence possibly resulting." United States v. Solomon, 422 F.2d 1110, 1118 (7th Cir. 1970). The defendant is not entitled to a new trial unless "there is a reasonable possibility that the [cartoon] had a prejudicial effect on the jury verdict." United States v. Berry, 64 F.3d 305, 307 (7th Cir. 1995). We review the district court's denial of the defendant's motion for a new trial based on juror misconduct for an abuse of discretion, and "we will reverse the district court's decision only if we have a strong conviction of error." United States v. McClinton, 135 F.3d 1178, 1186 (7th Cir. 1998).

The district court based its decision to deny the defendant's motion for a new trial on two grounds. First, the district court found that the cartoon in question depicted only events that were described at trial, and therefore did not introduce extraneous material into the jury's deliberations. The district court regarded the cartoon as simply another means for Huey to express his views and opinions about the case to the other jurors. Second, the district court found that the drawing itself was fairly benign, and that there was no reasonable possibility that the cartoon could have had a prejudicial effect. In considering the district court's denial of the defendant's motion for a new trial, we give great deference to the district court and recognize that "[t]he trial judge will always be in a better position than the appellate judges to assess the probable reactions of jurors in a case over which he has presided." Bruscino, 687 F.2d at 941; see also Arizona v. Washington, 434 U.S. 497, 513 (1978).

We are not convinced that a juror's cartoon

rendering of the events described at trial constitutes an extraneous influence. However, even if we assume arguendo that the introduction of the cartoon was improper, there would be no basis for overturning the district court's denial of the defendant's motion for a new trial. The cartoon was a humorous depiction of the defendant's activities as they were described at trial, and it did not make any reference to events that were not part of the evidentiary record nor expose the jury to any new evidence. In this situation, it is significant that the cartoon expressed one juror's view of the case, and was subject to the scrutiny and the questioning of other jurors. We also note that the evidence of the defendant's fraud in this case was overwhelming, a factor which militates against a finding that the introduction of the disputed cartoon effected the jury's verdict./1 See, e.g., United States v. Sanders, 962 F.2d 660, 673-74 (7th Cir. 1992). Against this backdrop, we cannot conclude that the district court abused its discretion in denying the defendant's motion for a new trial.

C.  The Abuse of Trust Sentencing Enhancement

The defendant's first challenge to his sentence centers on the district court's decision to increase his offense level by two points for an abuse of trust pursuant to sec. 3B1.3 of the Sentencing Guidelines. In applying this increase, the district court found that the defendant represented himself as a licensed money manager to Theresa Anzine and offered to invest her money for her. The district court further determined that the defendant assumed a position of trust in respect to Anzine when she gave him money to invest, and that he abused that position by misappropriating her funds. According to the defendant, these findings are erroneous because he did not hold himself out as an expert in investing in the manner that he contends would be necessary for an abuse of trust enhancement, but only stated that he had some level of knowledge in regard to money management. The defendant admits that he took advantage of an opportunity that was presented to him by Anzine, but argues that this kind of action does not constitute an abuse of trust.

The Sentencing Guidelines mandate a two-level increase "[i]f the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense . . . ." U.S.S.G. sec. 3B1.3. In order to determine if the abuse of trust enhancement was properly applied in this case, we consider: "(1) whether the defendant

occupied a position of trust; and (2) whether his abuse of the position of trust significantly facilitated the crime." United States v. Sierra, 188 F.3d 798, 802 (7th Cir. 1999). We review the district court's interpretation of what constitutes a "position of trust" de novo, see United States v. Boyle, 10 F.3d 485, 489 (7th Cir. 1993), but we review the district court's factual determination as to whether the defendant occupied such a position for clear error, see United States v. Bhagavan, 116 F.3d 189, 192 (7th Cir. 1997).

Although the defendant claims that he did not occupy a position of trust in relation to Anzine because he did not hold himself out as an expert money manager, the evidence introduced at trial indicates the opposite. The defendant told Anzine that he possessed a Series 7 license, which is the basic license required by the National Association of Securities Dealers before a person is permitted to operate as an investment broker. In addition, the defendant stated that he was knowledgeable about investments, and that he regularly invested other peoples' money for them. These representations were sufficient to convince Anzine to entrust the defendant with her money, thereby placing the defendant in a position of trust. See United States v. Gellene, 182 F.3d 578, 596 (7th Cir. 1999) (stating that a person is considered to have occupied a position of trust if he had "'access or authority over things of value'") (quoting United States v. Lamb, 6 F.3d 415, 419 (7th Cir. 1993)). Moreover, the defendant's actions in defrauding Anzine were not merely opportune, but were made possible by the private trust Anzine placed in him because of his avowed knowledge about financial markets and by his willingness to exploit that trust. See United States v. Kosth, 943 F.2d 798, 800 (7th Cir. 1991) (rejecting an abuse of trust enhancement where "no special element of private trust [was] involved"). Because the defendant's abuse of his position of trust facilitated his commission of the fraud against Anzine, the district court properly increased the defendant's sentence two offense levels pursuant to sec. 3B1.3 of the Sentencing Guidelines.

D.  The Vulnerable
Victim Sentencing Enhancement

The defendant also challenges the district court's decision to enhance his sentence two offense levels pursuant to U.S.S.G. sec. 3A1.1 based on the district court's conclusion that the women the defendant "targeted and preyed on" were vulnerable victims. Section 3A1.1(b)(1) provides that a defendant's offense level should be increased two levels "[i]f the defendant knew or

should have known that a victim of the offense was a vulnerable victim . . . ." U.S.S.G. sec. 3A1.1(b)(1). The Sentencing Guidelines further interpret "vulnerable victim" to mean "a person (A) who is a victim of the offense of conviction and any [relevant] conduct . . . ; and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. sec. 3A1.1, Application Note 2. Because the district court is in the best position to determine whether a victim is vulnerable, we review the district court's conclusions in that regard for clear error. See United States v. Snyder, 189 F.3d 640, 649 (7th Cir. 1999), cert. denied, 120 S.Ct. 839 (2000).

The defendant argues that the district court erred in determining that he deliberately targeted the women whom he defrauded because of their vulnerability, but that argument is misplaced. Section 3A1.1 of the Sentencing Guidelines was amended on November 1, 1995 to eliminate any targeting requirement, and the vulnerable victim enhancement no longer requires a showing of targeting. See U.S.S.G. sec. 3A1.1, Application Note 2; see also United States v. Bragg, 207 F.3d 394, 400 (7th Cir. 2000); Snyder, 189 F.3d at 649 (stating that the 1995 Amendments "make clear that there is no targeting requirement"). Although at least some of the defendant's conduct took place prior to November 1, 1995, the defendant was properly sentenced under the amended version of the Guidelines because most of the defendant's offenses occurred subsequent to the effective date of the 1995 amendments. See U.S.S.G. sec. 1B1.11(b)(3) ("If the defendant is convicted of two offenses, the first committed before, and the second after, a revised edition of the Guidelines Manual became effective, the revised edition of the Guidelines Manual is to be applied to both offenses."). As such, the government need only prove that the defendant's victims were vulnerable to justify an enhancement under U.S.S.G. sec. 3A1.1. See United States v. Brawner, 173 F.3d 966, 973 (6th Cir. 1999).

In addition to his targeting argument, the defendant contends that the district court erred in concluding that the women whom he defrauded were in fact vulnerable. According to the defendant, the district court based its findings of vulnerability on a stereotypical view of women, and not on any particular characteristics of the women the defendant defrauded. After a review of the record and the testimony given at trial, we believe that the defendant's argument has some merit. Although we give due deference to the district court's assessment of the witnesses

who appeared before it, see United States v. Billingsley, 115 F.3d 458, 463 (7th Cir. 1997), the evidence of vulnerability in regard to some of the women is questionable. For instance, the district court found that the enhancement could be applied based on the fact that one of the victims was single and, because of the assistance she received from others during her childhood, made a point of reaching out to those in trouble. An enhancement based on this finding is dangerously close to the imposition of an enhancement merely because the victim was a woman.

While we are not convinced that the evidence in this case is sufficient to support the conclusion that all of the defendant's victims were vulnerable, the government is only required to establish vulnerability in regard to one of the victims. See U.S.S.G. sec. 3A1.1(b)(1) (noting that the enhancement applies "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim") (emphasis added). In this case, the district court did not merely rely on an overbroad generalization, but rather made particularized findings about some of the victims--including one woman who was a recently-divorced immigrant and one who was involved in a troubled marriage--in sufficient detail to justify a finding that these women were emotionally vulnerable and were therefore "particularly susceptible to the criminal conduct." U.S.S.G. sec. 3A1.1, Application Note 2; see also United States v. Grimes, 173 F.3d 634, 637 (7th Cir. 1999) (stating that "[t]he 'vulnerable victim' sentencing enhancement is intended to reflect the fact that some potential crime victims have a lower than average ability to protect themselves from the criminal"). Because the district court based the vulnerable victim enhancement in this case at least in part on the particular characteristics of the defendant's victims, and because the district court did not clearly err in its vulnerability determinations, we conclude that the district court properly applied a two level vulnerable victim enhancement to the defendant's conduct.

III.  Conclusion

Because we find the evidence sufficient to justify the defendant's convictions and because we do not find any reversible error in the defendant's convictions or sentence, we AFFIRM the decision of the district court.

/1 The defendant argues that the prejudicial nature of the cartoon is indicated by the fact that one juror changed her mind after the cartoon was introduced into deliberations, but nothing in the

record indicates that the juror changed her mind because of the cartoon. Furthermore, Rule 606(b) of the Federal Rules of Evidence prohibits a juror from testifying as to the effect of any extraneous information introduced during jury deliberations. Fed.R. Evid. 606(b). In evaluating a claim that the jury was improperly influenced by extraneous material, "a district court must ignore a juror's comment regarding how a particular piece of material disposed the juror toward a particular verdict, and the district court must make an independent determination of the likely effect of the prejudicial material." United States v. Berry, 92 F.3d 597, 601 (7th Cir. 1996) (interpreting Rule 606(b)); see Haugh v. Jones & Laughlin Steel Corp., 949 F.2d 914, 917 (7th Cir. 1991).