In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1676

United States of America,

Plaintiff-Appellee,

v.

John F. Parolin,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 CR 912--Charles R. Norgle, Sr., Judge.

Argued January 11, 2001--Decided February 12, 2001

Before Flaum, Chief Judge, and Cudahy and Posner,
Circuit Judges.

Flaum, Chief Judge.  John F. Parolin pled guilty
to two counts of mail fraud in violation of 18
U.S.C. sec. 1341 and one count of interstate
transportation of stolen property in violation of
18 U.S.C. sec. 2314. Parolin now appeals his
sentence, arguing that: (1) the district court
during the sentencing hearing did not make
sufficient findings regarding certain proposed
enhancements; (2) the district court erred when
it enhanced Parolin's sentence for defrauding
vulnerable victims, U.S.S.G. sec. 3A1.1(b)(1);
(3) the district court erred when it increased
Parolin's offense level for misrepresenting that
he was acting on behalf of a government agency,
U.S.S.G. sec. 2F1.1(b)(4)(A); (4) the district
court erred when it enhanced his sentence for
violating a judicial order, U.S.S.G. sec.
2F1.1(b)(4)(B); and (5) the district court did
not comply with Apprendi v. New Jersey, 530 U.S.
466 (2000), when it imposed a sentence that
exceeded the statutory maximum for each
individual count. For the reasons stated herein,
we affirm.

Background

John F. Parolin defrauded several individuals
and entities and the resulting loss to the
involved parties was approximately $2.5 million.

He was an attorney from 1976 until May of 1995, when he voluntarily surrendered his law license. His schemes were numerous and at times complex. Since most of the frauds he engaged in are not relevant to this appeal, we will describe those schemes which are relevant to Parolin's legal challenges. Parolin defrauded Elisabeth Jesswein of: (1) $100,000 in a stock purchase scheme; (2) $200,000 in a loan scam; and (3) $15,000 for falsely representing that he made two estimated tax payments on her behalf to the IRS. He did send Jesswein various amounts of money concerning each of the above schemes, but he never repaid her fully. In February of 1993, he defrauded Matilda Moss of approximately $75,000, which came from the proceeds of a life insurance policy. As her financial advisor, he also said that he would negotiate with a bank concerning her second mortgage. He never did so and failed to make certain mortgage payments. Almost three years later, in January of 1996, Parolin gave Moss a check for approximately $1,258, which was worthless because it was drawn on a bank account that had been closed for six months. Despite Parolin's continual assurances that he would repay her, he never fulfilled his promise. During 1995, Parolin also defrauded Klaus Wieske and Hans Meng of approximately $712,5000. He represented that he could act as their attorney and help them purchase a building in Chicago, Illinois that he said the U.S. Department of Housing and Urban Development ("HUD") had foreclosed upon, when in fact HUD had not done so.

Parolin pled guilty to a three-count superseding information on November 2, 1999: Counts One and Three involved mail fraud in violation of 18 U.S.C. sec. 1341 and Count Two concerned transportation of stolen property in violation of 18 U.S.C. sec. 2314. On March 2, 2000, the district court sentenced Parolin to 188 months of imprisonment on Counts One, Two, and Three, and to a consecutive six months pursuant to 18 U.S.C. sec. 3147. The court also ordered that he pay restitution of $2.5 million, minus one dollar. Parolin now appeals his sentence.

Discussion
A.  The District Court's Findings
Regarding Parolin's Sentence

Initially, we must address Parolin's contention that the district court did not make particularized findings with regard to the following sentencing enhancements: (1) vulnerable victims, U.S.S.G. sec. 3A1.1(b)(1); (2) misrepresenting that he was acting on behalf of a government agency, U.S.S.G. sec. 2F1.1(b)(4)(A); and (3) violating a judicial

order, U.S.S.G. sec. 2F1.1(b)(4)(B). The Sentencing Guidelines instruct a district court to resolve disputes concerning sentencing factors at a sentencing hearing in accordance with Fed.R.Crim.P. 32(c)(1). See U.S.S.G. sec. 6A1.3(b) (1998). For our purposes, the portion of Fed.R.Crim.P. 32(c)(1) at issue is: "At the sentencing hearing, the court must afford counsel for the defendant and for the Government an opportunity to comment on the probation officer's determinations and on other matters relating to the appropriate sentence, and must rule on any unresolved objections to the presence report. . . . For each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing." We turn to whether the district court complied with Fed.R.Crim.P. 32(c)(1).

The record indicates that the district court's findings were of some concern to both parties. Initially, the government asked the court whether it was "going to either adopt the PSI [presentence investigation report] or [make] oral rulings or written rulings on the other matters?" The district court responded, "Well, implicit in what I said was that the Court adopts the presentence investigation report, which is consistent with the government's position." Some time later in the hearing, Parolin's counsel again raised the issue of whether adequate findings had been made by the court, "Judge, additionally, I know the government had already asked, but your Honor is not going to draft any written findings regarding each of the Guideline issues?" The court at this point attempted to elicit a more specific objection, "Well, if you want me to say anything more than what I have said, you can bring it to my attention. I feel that I have said enough. And if you want me, however, to say more, what is it you want me to say?" Parolin's counsel then acknowledged that the district court had "basically adopted [the] probation's and the government's position." Once again, the court reiterated its position: "[A]s to an amount of loss and . . . acceptance of responsibility, . . . I have agreed with the defendant. Otherwise I am adopting the probation department's presentence investigation report, . . . which is consistent with the government's position on all of these other key issues and the ultimate determination of the number of points assessed." Parolin's counsel did not make any further objections to the district court's explanation of its findings./1 These exchanges reveal that the district court purposefully and clearly adopted the presentence investigation

report ("PSR") as constituting its own findings on certain contested sentencing factors.

As the record reflects, the court was familiar with the relevant sentencing disputes. Both sides briefed the contested sentencing questions and were given an opportunity during the sentencing hearing to argue the issues and present evidence. The court stated that it had reviewed the defendant's and the government's submissions, and remarked to Parolin's counsel, "I want to assure counsel that I have read all of your submissions and given this case a great deal of thought." We have no reason to doubt the district court's assertion that it carefully considered what would be an appropriate sentence for Parolin. A court can satisfy the requirements of Rule 32 by adopting the findings and calculations contained in the PSR, "provided that those findings are based upon sufficiently reliable information. In fact, when a defendant has failed to produce any evidence calling the report's accuracy into question, a district court may rely entirely on the PSR." United States v. Taylor, 72 F.3d 533, 547 (7th Cir. 1995) (internal citations omitted). Parolin made no affirmative contention that the PSR was inaccurate; therefore, we have no reason to question the court's reliance upon the PSR. The court stated that it had adopted the PSR and a district court's "reference to the findings and rationale in the presentence report allows us, as a reviewing court, to evaluate the district court's decision, and that is all that is required." United States v. Taylor, 135 F.3d 478, 483 (7th Cir. 1998). Therefore, we find that the district court's adoption of the PSR was proper and allows us to review the defendant's objections to particular sentencing enhancements that the district court imposed.

B.  Vulnerable Victims

Parolin challenges the district court's decision to enhance his sentence two offense levels based upon its conclusion that Matilda Moss and Elisabeth Jesswein were vulnerable victims. Section 3A1.1(b)(1) of the Sentencing Guidelines provides that "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim, increase by 2 levels." The Sentencing Guidelines commentary states that a vulnerable victim is an individual "(A) who is a victim of the offense of conviction and any conduct for which the defendant is accountable under sec.1B1.3 (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. sec. 3A1.1(b)(1), cmt. n.2. Determining whether a defendant's victims were

"unusually vulnerable" is a question of fact that is reversible only for clear error. See United States v. Billingsley, 115 F.3d 458, 462 (7th Cir. 1997); see also United States v. Sutherland, 955 F.2d 25, 26 (7th Cir. 1992). To warrant the imposition of the vulnerable victim enhancement, it is only necessary that the government establish that a single individual was vulnerable. See United States v. Paneras, 222 F.3d 406, 414 (7th Cir. 2000).

Parolin's main contention is that the government has not shown that the alleged victims, Moss and Jesswein, were "unusually" vulnerable. According to Parolin, the government's reliance on Jesswein being in her sixties is not sufficient, without more, to render her unusually vulnerable and the fact that both Moss and Jesswein are women also does not suggest that they are vulnerable. Although the government contends that Parolin targeted Moss and Jesswein, he argues that both women sought out his assistance. Moss' husband had handled all of the family's financial affairs when he was alive, therefore the government claims she turned to Parolin for assistance because she did not believe she could manage her own finances. However, Parolin contends that it is not unusual for one spouse to deal with all of the family's financial matters, and that traditionally a husband assumes this role. Similarly, Parolin advances that it is not uncommon for a person to use the services of a person or business that they, a friend, or a family member, used in the past. Consequently, according to Parolin, the government's theory that Jesswein relied on him because he had represented her husband in various transactions does not render her unusually vulnerable. Parolin points out that Moss' inability to write and understand English well is not a fact which makes her unusually vulnerable because many people do not read or write the English language. Parolin also suggests that Moss and Jesswein's particular situations made it perhaps easier for him to defraud them, but mere status of this sort is not enough to warrant a vulnerable victim enhancement.

It is clear that Moss was particularly susceptible to Parolin's schemes because she was a financially unsophisticated individual. Moss had grown up in South America and had a very limited ability to read English and even more limited ability to write English. She sought out Parolin's assistance shortly after the death of her husband because a friend suggested that he could help her with her financial difficulties./2 At the time, she had three teenage children, a second mortgage on her home, and bills continually were arriving. Moss lacked

the ability to handle her own finances as her husband dealt with these matters when he was alive. Prior to her husband's death, she had not worked outside the home and had no business experience. Parolin knew that Moss was unable to deal with her financial matters and was extremely limited in her ability to write English. See United States v. Grimes, 173 F.3d 634, 637 (7th Cir. 1999) ("Only a very unsophisticated person would think that although he had bad credit he could borrow a substantial sum of money without having to put up security or any other guaranty of repayment (such as an accommodation note)."). Moss therefore was an unusually vulnerable victim because she lacked the necessary financial sophistication to detect and question Parolin's fraudulent schemes.

Further, the district court did not err in finding that Jesswein was also an unusually vulnerable victim. Less than six months after her husband died, Parolin defrauded her of $100,000. Her own daughter said that "[d]uring the year following my father's death . . . my mother was extremely vulnerable." Her work experience was limited to some part-time waitressing and rehabbing apartment buildings with her husband. Jesswein was acquainted with Parolin because he had handled various financial affairs for her deceased husband. As a consequence, Parolin knew that she would trust him because of his prior relationship with her deceased husband and such trust would cause her not to question his actions, making it unlikely she would discover the fraud. Jesswein was particularly susceptible to Parolin's fraudulent schemes both because of her emotional state after her husband's death and her lack of financial sophistication.

Therefore, we conclude that Jesswein and Moss were unusually vulnerable victims. "The 'vulnerable victim' sentencing enhancement is intended to reflect the fact that some potential crime victims have a lower than average ability to protect themselves from the criminal." Grimes, 173 F.3d at 637. Both these women had "a lower than average ability to protect themselves" against Parolin's schemes. Moss faced financial troubles and lacked the ability to address them herself. Likewise, Jesswein had limited financial sophistication, and in addition, the death of her husband caused her to be emotionally devastated, leaving her more open to Parolin's approaches. See Paneras, 222 F.3d at 414 (internal citations and quotation marks omitted) (The district court "made particularized findings about some of the victims--including one woman who was a recently-divorced immigrant and one who was involved in a troubled marriage--in sufficient detail to justify a finding that these women were

emotionally vulnerable and were therefore particularly susceptible to the criminal conduct."). The district court did not clearly err when it determined that Moss and Jesswein were unusually vulnerable victims and therefore we conclude the district court properly applied a two-level vulnerable victim enhancement to the defendant's sentence.

C.   Violation of A Judicial Order/ Misrepresenting One is Acting on Behalf of a Government Agency

Parolin argues that the district court engaged in impermissible double counting when it increased his offense level pursuant to Guideline sec. 2F1.1(b)(4)(B) because he had violated a judicial order. Section 2F1.1(b)(4)(B) states that for a "violation of any judicial or administrative order, injunction, decree, or process not addressed elsewhere in the guidelines, increase by 2 levels." In the sentencing context, we review a district court's findings of fact for clear error and the district court's application of the Sentencing Guidelines to the facts is afforded due deference. See United States v. Purchess, 107 F.3d 1261, 1265-66 (7th Cir. 1997). We review de novo questions of law that relate to the interpretation of the Sentencing Guidelines. See United States v. Haines, 32 F.3d 290, 293 (7th Cir. 1994).

Although Parolin concedes that he violated three separate court orders, he asserts that the enhancement for violation of a judicial order constitutes double counting. The three court orders were: (1) The State of Illinois Supreme Court issued an order in May of 1995 disbarring Parolin and striking his name from the roll of attorneys licensed to practice law in Illinois; (2) The court issued an injunction prohibiting Parolin from transferring funds which belonged to his client Pioneer Engineers, Inc.; he did so, and was held in contempt for his action; and (3) Parolin in 1993 created a false court order, which allegedly vacated a judgment against one of his clients and he gave the order to this client so that the person could circulate it to his creditors. According to Parolin, such violations served as the basis for other sentencing enhancements that the district court imposed. Parolin claims that his status as an attorney was important to his success in all phases of his fraud schemes. Consequently, the order of disbarment relates to every enhancement of his offense level, and Parolin contends, his disbarment was critical in the abuse of a position of trust enhancement, U.S.S.G. sec. 3B1.3. Parolin advances that the government stressed that an abuse of a position of trust

enhancement was warranted by emphasizing his position as an attorney. His decision to continue to practice law after being disbarred, acting in a fraudulent manner, and violating other orders to cover up the fact that he no longer was permitted to practice law--all of this behavior Parolin suggests served as the main, if not primary reason, for the abuse of a position of trust enhancement. His status as an attorney also was a theme that one can detect throughout the government's argument and the probation office's findings on the issues of: (1) amount of loss, U.S.S.G. sec. 2F1.1(b)(1)(M); (2) effect on a financial institution, U.S.S.G. sec. 2F1.1(b)(7)(B); (3) vulnerable victims, U.S.S.G. sec. 3A1.1(b)(1); (4) role in the offense, U.S.S.G. sec. 3B1.1(c); and (5) more than minimal planning, U.S.S.G. sec. 2F1.1 (b)(2). Parolin argues that his position as an attorney and violation of the relevant orders was addressed by other enhancements and to impose an enhancement for violation of judicial orders results in impermissible double counting.

Parolin's argument is not convincing. The Sentencing Guidelines provide the following rationale for an enhancement when a defendant violates a judicial order: "A defendant who has been subject to civil or administrative proceedings for the same or similar fraudulent conduct demonstrates aggravated criminal intent and is deserving of additional punishment for not conforming with the requirements of judicial process or orders issued by federal, state, or local administrative agencies." U.S.S.G. sec. 2F1.1(b)(4)(B), background commentary. The question becomes whether this additional punishment is not warranted because it has been covered by other enhancement provisions imposed on the defendant. Parolin would like us to believe that the abuse of a position of trust enhancement fully covers his violating a judicial order that disbarred him from practicing law. The difficulty with this proposition is that it is possible that he both abused the trust of his victims, while simultaneously violating a judicial order. "[D]ouble counting occurs when identical conduct is described in two different ways so that two different adjustments apply." Haines, 32 F.3d at 293. The commentary to the Sentencing Guidelines echoes this thought: "This subsection does not apply to conduct addressed elsewhere in the guidelines; e.g., a violation of a condition of release (addressed in sec. 2J1.7 (Offense Committed While on Release)) or a violation of probation (addressed in sec. 4A1.1 (Criminal History Category))." U.S.S.G. sec. 2F1.1(b)(4)(B), cmt. n.6. Parolin has not given us any concrete examples of how the abuse of a position of trust enhancement or any other of the

other enhancements results in impermissible double counting based upon "identical conduct" being "described in two different ways." Haines, 32 F.3d at 293. In large part, Parolin succeeded in abusing the trust of his victims because of his fiduciary relationship with them in his role as their attorney. The abuse of a position of trust enhancement takes into account this behavior. However, the enhancement in no way directly accounts for Parolin's violation of particular judicial orders, including the order not to practice law. "[E]ven if there is some overlap in the factual basis for two or more sentencing adjustments, so long as there is sufficient factual basis for each they may both be applied." Id. at 293-94. Parolin violated the court order and in the process not only abused his victims' trust, but disobeyed the court's authority as well. This latter action reveals his "aggravated criminal intent," which warrants greater punishment. U.S.S.G. sec. 2F1.1(b)(4)(B), background commentary. None of the other enhancements mentioned by Parolin or the abuse of a position of trust enhancement seem to fully encompass such an action, and as a consequence, we do not find that any double counting has occurred.

We need not address Parolin's contention that he did not misrepresent that he was acting on behalf of a government agency. See U.S.S.G. sec. 2F1.1(b)(4)(A). Section 2F1.1(b)(4) provides: "If the offense involved (A) a misrepresentation that the defendant was acting on behalf of a charitable, educational, religious or political organization, or a government agency; or (B) violation of any judicial or administrative order, injunction, decree, or process not addressed elsewhere in the guidelines, increase by 2 levels." (emphasis added). The commentary explains that "[t]he adjustments in sec. 2F1.1(b)(4) are alternative rather than cumulative. If in a particular case, however, both of the enumerated factors applied, an upward departure might be warranted." U.S.S.G. sec. 2F1.1(b)(4), cmt. n.1. In this case, Parolin received a two-level enhancement for violating both a judicial order and misrepresenting that he was acting on behalf of a government agency. He did not receive any upward departure, therefore we can affirm this particular enhancement based on either his violation of judicial orders or misrepresenting that he was acting on behalf of a government agency. Since we have already determined that he violated judicial orders, we need not address the alternate ground. Therefore, we affirm the district court's two-level enhancement for violation of judicial orders under U.S.S.G. sec. 2F1.1(b)(4)(B).

D. Apprendi

Parolin claims that the sentence the district court imposed violates Apprendi v. New Jersey, 530 U.S. 466 (2000). The district court determined that Parolin's offense level was 36 and his criminal history was I, which under the Sentencing Guidelines means his sentence range is 188 to 235 months. According to Parolin, the district court then imposed a 196 month sentence for violations of 18 U.S.C. sec. 1341 and 18 U.S.C. sec. 2314. This sentence Parolin asserts was imposed concurrently, with the exception of a six month sentence for violation of 18 U.S.C. sec. 3147, a term of imprisonment which by statute must run consecutively to any other sentence imposed. Parolin then concludes that the statutory limits for violation of 18 U.S.C. sec.sec. 1341 (five year maximum) and 2314 (ten year maximum) are ten years (120 months) because he believes his sentence is concurrent and that the 196 month sentence is in direct violation of the mandate of Apprendi. Parolin further claims, because his sentence is beyond the statutory maximum, that the district court had to use the reasonable doubt standard rather than the preponderance standard for those factors that caused his sentence to rise above the maximum allowed.

Parolin's argument is a failing one because it is based on a faulty premise. We review Parolin's Apprendi challenge for plain error because he did not object in the district court on this ground. See United States v. Nance, No. 00-1836, 2000 WL 1880629, at *4-5 (7th Cir. Dec. 29, 2000); see also United States v. Mietus, No. 99-3535, 2001 WL 46572, at *7 (7th Cir. Jan. 22, 2001) and United States v. Jackson, No. 98-2696, 2001 WL 21355, at *1 (7th Cir. Jan. 10, 2001). The court explained its sentence: "So that it is perfectly clear, six months is a consecutive sentence which I am imposing under 18 U.S.C. sec. 3147. That six months must run consecutively to any other sentence of imprisonment. The first sentence of imprisonment is 188 months in total on Counts 1, 2 and 3, six months consecutive to it under 18 U.S.C. sec. 3147, leads to a total sentence of 194 months." Parolin suggests that his sentence was concurrent for Counts One, Two, and Three and thus resulted in a maximum of 120 months or 10 years because the maximum for one of the counts was ten years. The district court said that it had "rejected" the defendant's request for an "imposition of concurrent sentences." The implication is that the sentences for Counts One, Two, and Three were imposed consecutively, and in fact the sentence reflects this with the 188 month term of confinement. The district court properly complied with sec. 5G1.2(d) of the

Sentencing Guidelines, which states: "If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment." The six months consecutive to the total sentence was added under 18 U.S.C. sec. 3147 because Parolin had been convicted of an offense while on release and the district court complied with the relevant Guideline, U.S.S.G. sec. 2J1.7, when imposing this additional consecutive sentence. Apprendi "holds that any fact other than the fact of a prior conviction that increases the penalty for an offense beyond the statutory maximum penalty for that offense is an element of the crime and so must be submitted to the jury and proved beyond a reasonable doubt." Jackson, 2001 WL 21355, at *1. As the district court itself acknowledged during the sentencing hearing, Counts One and Three were mail fraud charges, 18 U.S.C. sec. 1341, which each have a five year statutory maximum sentence and Count Two was an interstate transportation of stolen property charge, 18 U.S.C. sec. 2314, which has a ten year statutory maximum sentence. If consecutive sentences were imposed, the total sentence that could be given on the relevant charges was 240 months. The applicable Guidelines level was 36, according to the district court, and the sentencing range was therefore 188 to 235 months. Even with the additional six month consecutive sentence for violation of 18 U.S.C. sec. 3147, the total sentence was 196 months, and thus well within the statutory maximum of 240 months. Therefore, there has been no Apprendi violation because Parolin's sentence does not exceed the statutory maximum. See Talbott v. Indiana, 226 F.3d 866, 869-70 (7th Cir. 2000).

Conclusion

The district court's adoption of the PSR was proper and allowed us to review the defendant's objections to particular sentencing enhancements that the district court imposed. Further, the district court's decision to increase Parolin's sentence based upon the vulnerable victim and violation of judicial orders enhancements does not constitute clear error. Finally, we find that Parolin's sentence does not violate Apprendi. For the reasons stated herein, we AFFIRM the decision of the district court.

/1 The government contends that Parolin waived the issue of the adequacy of the district court's findings by failing to object during sentencing, and as a consequence, the standard of review regarding this issue should be plain error. It is

not clear that Parolin's counsel failed to object to the district court's findings and we need not address the government's claim because the court did not commit error.

/2 The government claims that Parolin targeted both Jesswein and Moss. Parolin's defense counsel, at oral argument, stressed that the record does not support a conclusion that Parolin targeted either victim as well as the fact that the Sentencing Guidelines has been amended to no longer require targeting. As amended on November 1, 1995, sec. 3A1.1 does not require a showing of targeting. See Paneras, 222 F.3d at 413. Further, while Parolin began defrauding Jesswein in or about May of 1992, he continued through at least 1996 to promise to repay her the money that he owed her. As for Moss, Parolin began to defraud her in February of 1993 and he continually promised to repay her and held himself out as her attorney from May of 1995 through 1996, even though he had surrendered his law license in May of 1995. Although some of Parolin's conduct occurred prior to the November 1, 1995 amendment, the amended version of the Guidelines properly was applied to Parolin because he engaged in conduct subsequent to the effective date of the 1995 amendments. Id. Therefore, it was only necessary that the government show under U.S.S.G. sec. 3A1.1(b)(1) that the victims were vulnerable to warrant the enhancement.