**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ryan P. ROCHESTER, Defendant–Appellant.**

No. 02–1397.

United States Court of Appeals, Seventh Circuit.

Argued July 9, 2002.

Decided July 17, 2002.

Before POSNER, RIPPLE, WILLIAMS, Circuit Judges.

## ORDER

The district court sentenced Ryan Rochester to 63 months' imprisonment to be followed by 3 years' supervised release after he pleaded guilty to possession with intent to distribute ecstasy. *See* 21 U.S.C. § 841(a)(1). Mr. Rochester appeals the sentence on the ground that the district court erred when it adjusted his base offense level upward by two levels for possession of a firearm under United States Sentencing Guideline § 2D1.1(b)(1). We affirm.

## I

## BACKGROUND

In August 2001, DEA agents assisted by cooperating drug dealer Scott Swanson conducted a controlled sale of seven pounds of marijuana to Mr. Rochester at the Hawthorne Suites Hotel in Madison, Wisconsin. Mr. Rochester met Mr. Swanson at the hotel and they agreed on an exchange of the marijuana for cash and a quantity of the drug ecstasy. When Mr. Rochester removed $ 19,000 in cash and a bag containing 1,000 ecstasy tablets from his pants pocket and put them on the table, DEA agents entered the room and

arrested him. Agents searched Mr. Rochester, the vehicle he drove to the hotel and a backpack he possessed during the sale. They found marijuana, hashish, prescription pills and a small smoking device, but no firearms.

After his arrest, Mr. Rochester consented to a search of his residence. During the search, agents found a loaded 12–gauge shotgun in the closet, and a loaded nine-millimeter pistol in the cushions of a loveseat. Mr. Rochester claimed that he possessed the guns because he lived in a bad neighborhood. The agents also discovered in Mr. Rochester's bedroom 490.5 grams of marijuana, 40.4 grams of hashish, assorted marijuana paraphernalia, a digital scale, rolling papers and containers with marijuana residue. The drugs at Mr. Rochester's residence were included as relevant conduct to determine his base offense level. Mr. Rochester did not object.

At sentencing both the government and Mr. Rochester objected to the upward adjustment under § 2D1.1(b)(1). Nonetheless, the district court found that Mr. Rochester possessed two firearms during the course of his offense and adjusted upward:

> When you look at the entire offense conduct, it includes a lot more than just the distribution on the one day at issue, and the kind of drugs—excuse me—the kind of guns, the location of the guns, the fact that they were loaded and in close proximity for paraphernalia that was in the apartment makes it seem improbable to me that these guns were not connected with the offense of drug distribution. It's hard to imagine any reason Mr. Rochester would have had loaded guns, a loaded shotgun and a loaded nine millimeter pistol, under the cushion of his loveseat had it not been for his possession of drugs and his involvement in drug distribution. So to be fair to other defendants who have had

similar factual circumstances and to be consistent, I have to find that Mr. Rochester gets an enhancement of two levels for the possession of the firearms.

Adopting the Probation Office's proposed guideline calculations, the district court found that Mr. Rochester's offense conduct, including relevant conduct, consisted of possessing with intent to distribute ecstasy, marijuana and hashish equivalent to 158.6 kilograms of marijuana, resulting in a base offense level of 26. The district court adjusted upward two points under § 2D1.1(b)(1), but adjusted downward three points for acceptance of responsibility, resulting in a total offense level of 25. Coupled with a Criminal History Category II, the ultimate guideline imprisonment range was 63–78 months, and the district court sentenced Mr. Rochester to 63 months' imprisonment.

## II

## ANALYSIS

Mr. Rochester contends that the two-point upward adjustment for possession of a firearm under § 2D1.1(b)(1) was error. Specifically, he argues that the district court erred in finding that the guns in his residence were connected to his drug offense because, he says, there is no evidence to show that he possessed a gun during any drug transaction and no evidence to show that he conducted drug trafficking from his residence.

Section 2D1.1(b)(1) provides: "If a dangerous weapon (including a firearm) was possessed, increase [the offense level] by 2 levels." U.S.S.G. § 2D1.1(b)(1). "The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D.1.1, comment (n.3).

Mr. Rochester's argument misapprehends the burdens under § 2D.1.1(b)(1). The government bears the initial burden of proving by a preponderance of the evidence that the defendant possessed a weapon in a place where drugs were present. *United States v. Bjorkman*, 270 F.3d 482, 492 (7th Cir.2001), *cert denied*, 122 S.Ct. 2290, 152 L.Ed.2d 1049 (2002). But the government need not link the guns to the offense of conviction, *United States v. Williams*, 272 F.3d 845, 853 (7th Cir.2001), *cert. denied sub nom. Mitchell v. United States*, —— U.S. ——, 122 S.Ct. 1339, 152 L.Ed.2d 243 (2002), or to any specific drug transaction, *United States v. Adams*, 125 F.3d 586, 596 (7th Cir.1997). Rather, "the government need only show that the weapon was possessed during any relevant conduct." *Williams*, 272 F.3d at 853. Thus, upward adjustment under § 2D1.1(b)(1) "is appropriate for simple, and entirely passive, possession of a firearm." *United States v. Johnson*, 227 F.3d 807, 814 (7th Cir.2000) (internal quotation and citation omitted). Although Mr. Rochester does not contend that the government failed to meet its initial burden in this case, there is no question that sufficient evidence exists to satisfy that burden. The PSR states, and Mr. Rochester did not dispute, that he admitted to agents that the guns were his. *See United States v. Cashman*, 216 F.3d 582, 588 (7th Cir.2000) (defendant's admission at time of arrest that weapon was his was sufficient to demonstrate possession). And it is plain that Mr. Rochester possessed the guns during his relevant conduct—he did not object to the inclusion as relevant conduct of the drugs found in his residence, and he did not dispute the statement in the PSR that he "handled large amounts of 'ecstasy,' high quality marijuana, and cash through his residence." "[W]hen a defendant has failed to produce any evidence calling the report's accuracy into question, a district court may rely entirely on the PSR." *United States v.*

*Parolin*, 239 F.3d 922, 925 (7th Cir.) (internal quotation and citation omitted), *cert. denied*, 533 U.S. 923, 121 S.Ct. 2538, 150 L.Ed.2d 707 (2001).

Once the government meets its initial burden, it becomes the defendant's burden to show that it is "clearly improbable" that the weapons were connected with the underlying offense. *Bjorkman*, 270 F.3d at 492. We have held that the relationship between the weapon and the underlying offense is a factual determination and therefore reviewed for clear error. *See, e.g., Johnson*, 289 F.3d at 1042; *Bjorkman*, 270 F.3d at 493. Accordingly, we will reverse "only if, after reviewing the entire evidence, we are left with the definite and firm conviction that a mistake has been committed." *United States v. Schuh*, 289 F.3d 968, 972 (7th Cir.2002) (internal quotation and citation omitted).

Having reviewed all of the record evidence, we conclude that the district court did not clearly err in finding that the guns in Mr. Rochester's residence were connected to his drug offense. First, Mr. Rochester offered no evidence to show that the guns and drugs in his residence were unconnected, which standing alone is arguably sufficient to sustain the district court's decision. *See, e.g., United States v. Berkey*, 161 F.3d 1099, 1103 (7th Cir. 1998) (affirming § 2D1.1(b)(1) adjustment where government met initial burden and defendant offered no evidence. that connection was clearly improbable). But there is more. We find it particularly significant that Mr. Rochester kept one of his guns under the cushions of a loveseat—just the sort of hiding place one might expect from a drug dealer endeavoring to protect his drugs and money. *See United States v. Singleton*, 125 F.3d 1097, 1110 (7th Cir.1997) (affirming § 2D1.1(b)(1) adjustment where "firearms were placed strategically around the

house so that they would be readily available during a transaction"); *United States v. McDonald*, 121 F.3d 7, 10 (1st Cir.1997) ("[W]hen the weapon's location makes it readily available to protect either the participants ... or the drugs and cash ... there will be sufficient evidence to connect the weapons to the offense conduct." (internal quotation omitted)). Additionally, although the government asserts in its brief that there is no evidence that Mr. Rochester conducted drug trafficking from his residence, we have affirmed a § 2D1.1(b)(1) adjustment under such circumstances. *See Cashman*, 216 F.3d at 588 (gun and drugs were in separate areas of the motor home and there was no evidence that defendant conducted any drug transaction there). Regardless, we note that the there *is* evidence that Mr. Rochester trafficked from his residence—the PSR states (and, again, Mr. Rochester did not dispute) that Mr. Rochester handled large quantities of drugs and money through his residence and that he possessed the tools of the drug trade there (scale, rolling papers and containers with marijuana residue). Thus, notwithstanding the government's characterization of this case as a "close call," we nevertheless think that under the circumstances it is the kind of call the district judge was empowered to make. *See United States v. Wyatt*, 102 F.3d 241, 247 (7th Cir.1996) ("the phrase 'in connection with' should be construed expansively"; it means not "merely coincidental"). The district court did not clearly err in adjusting upward under § 2D1.1(b)(1).

AFFIRMED