UNITED STATES of America, Plaintiff–Appellee,

v.

Thelma GIST, Defendant–Appellant.

No. 95–2617.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 13, 1995.

Decided March 19, 1996.

James A. Shapiro, Cheryl Bell (argued), Office of U.S. Atty., Criminal Division, Chicago, IL, Barry Rand Elden, Chief of Appeals, Office of U.S. Atty., Criminal Appellate Division, Chicago, IL, for plaintiff-appellee.

John T. Theis (argued), Chicago, IL, for defendant-appellant.

Before ESCHBACH, COFFEY, and EVANS, Circuit Judges.

COFFEY, Circuit Judge.

Thelma Gist pled guilty pursuant to a plea agreement to one count [1] of mail fraud in violation of 18 U.S.C. § 1341, arising out of her operation of a travel promotion business in which customers would pay her for bargain travel packages and she would deliver less than promised. Her activities included passing counterfeit checks to cruise lines and airlines, and other fraudulent activities. The fraudulent conduct eventually affected approximately 800 victims and produced a loss of up to $350,000.

The district court sentenced defendant to 270 days' incarceration, followed by a period of three years' supervised release. The sentence included a two-level increase of the offense level for violation of a judicial order,[2] pursuant to U.S.S.G. § 2F1.1(b)(3)(B).

■ We review de novo any legal conclusions made by the sentencing court. *United States v. Michalek*, 54 F.3d 325, 329 (7th Cir.1995). We review the sentencing court's factual determinations for clear error, and cannot disturb those findings unless our review of the evidence leaves us with the "definite and firm conviction that a mistake has been committed." *United States v. Mohammad*, 53 F.3d 1426, 1435 (7th Cir 1995), quoting *United States v. Mustread*, 4⁇ F.3d 1097, 1103 (7th Cir.1994).

Under U.S.S.G. § 2F1.1(b)(3)(B), a two-level enhancement is appropriate if the offense involves a "violation of any judicial or administrative order, injunction, decree, or process not addressed elsewhere in the guidelines." The defendant must have "knowledge of the prior decree or order." § 2F1.1, comment n.5.

■ Defendant argues that the district court erred in enhancing her offense level two levels for violation of a court order when the actual order was never presented to the sentencing judge. Defendant concedes, however that at the sentencing hearing the "probation officer showed counsel for the defendant and the Government a copy of a court order from the Circuit Court of Cook County which she asserted was the basis for the increase." (Appellant's brief, p.5) Defendant only complains that the judge himself was never provided with a copy of the order. The actual order was not necessary where the sentencing judge properly relied on information in the presentence investigation report (PSR). See *United States v. Anaya*, 32 F.3d 308, 313 & n. 2 (7th Cir.1994). The court was entitled to rely on the PSR which states that on June 9, 1992, the Circuit Court of Cook County, in response to a complaint against defendant filed by the Illinois Attorney General's Office, permanently enjoined defendant from "acting directly or indirectly as a travel promoter as a result of a suit in the State of Illinois." PSR p.7; Addendum to PSR p.1, par. 2.

Moreover, the district court judge held a hearing and directly examined defendant on the issue. Defendant never denied the existence of the order; she merely denied knowing about it. At the sentencing hearing, she first testified that she learned of the June 9,

---

1. Defendant was originally charged with 22 counts of defrauding her customers.

2. The written plea agreement made no reference to an increase for violation of a court order, but the probation officer recommended in the PSR that a two level increase by given. However, the plea agreement explicitly provided that the Guidelines calculations were tentative and subject to final determination by the court.

1992 injunction in July 1993. (Tr. 9–11) Within a few minutes, however, she admitted learning of the injunction as early as December 27, 1992, when she spoke to an Assistant Attorney General about it:

THE COURT: The first time that you learned about [the June 9, 1992 order] was on December 27, 1992?

DEFENDANT: It was the first time I had learned that there was something to the effect dealing with that case that I wasn't supposed to work with anyone, that I wasn't supposed to do any of the things I was doing with anybody until that case was settled, yes. That was the understanding I had.

\* \* \* \* \* \*

THE COURT: Just to summarize then, is it your testimony today under oath that the first time that you learned that an order had been entered in the Circuit Court of Cook County on June 9th, 1992, was when you talked to the Assistant Attorney General in the Attorney General's Office on December 27, 1992?

DEFENDANT: Yes.

THE COURT: That's your statement?

DEFENDANT: That's my statement. (Tr. 16–17)

Once that admission was made, the district court judge went on to question defendant directly about her activities following her December 27, 1992 discovery that the injunction existed:

\* \* \* \* \* \*

THE COURT: Now after December 27th, 1992, what did you do in relationship to your travel business?

DEFENDANT: The travel business, it continued. I didn't have a travel business when I was with Global Travel and that order was entered.

THE COURT: What did you do?

DEFENDANT: In 1993, after that, I continued the—I continued the trips that I had completed them [sic], completed the trips I already had in-house.

THE COURT: What does that mean?

DEFENDANT: It means that all the trips I had done, including these here, had already started. My business had started before December 1992. I completed the trips that had begun, like in October when they started, and they completed like in April of 1993. (Tr. 17–18)

The district court concluded that:

Defendant violated the order of June 9th, 1992, by continuing to carry out, directly or indirectly, activities in conjunction with travel and travel promotion as defined by the Travel Promotion Consumer Protection Act, and that therefore the probation officer's position is correct, that there was a violation of the court's order—that is, the Circuit Court of Cook County—which directly or indirectly commanded that the [defendant] not engage in travel activities as defined under the Travel Promotion Consumer Protection Act. (Tr. 18)

Defendant prefers to characterize her responses to the sentencing judge's questions as being "at best ambiguous." (Appellant's brief, p.8) But her own testimony at sentencing directly contradicts her statement before this court that "she learned sometime in 1993 of the existence of a court order which might have applied to her and she committed the acts in violation of the order after she learned of its existence." (Appellant's brief, p.8)

She argues that it was never made clear whether she was a party to the Cook County law suit; but she admitted being the subject of the judicial order. This is not a case where others were accused of related misdeeds and defendant was not sure if she also was covered by the injunction. Defendant has never argued that the fraud was the fault of some unknown person controlling the various travel agencies she ran from her home. Defendant also argues that she did not know what, if anything, she was enjoined from doing; but she knew she was enjoined from any travel business activities, not just certain aspects of the business, and she admitted the breadth of the injunction when she testified that she "wasn't supposed to do any of the things I was doing with anybody." (Tr. 16) She argues further that she did not know the name and case number of the lawsuit; but she admits she was informed of the order at

the offices of the Attorney General, and admits the order was shown to her attorney at the federal sentencing hearing, and the PSR included the lawsuit's case number.

And finally, defendant argues that she did not know how she violated the court order. Defendant argues, for example, that there is no evidence that she violated any order, since all she did was help out customers "who were counting on those trips" in 1993, and had begun inquiries about the trips in 1992, prior to defendant's learning of the injunction. (Appellant's brief, p.9) Defendant's argument that she was merely helping out customers is ludicrous. The PSR shows that she continued accepting money and defrauding customers on a remarkably extensive basis in 1993.

For example, defendant orchestrated these frauds in 1993: an April 24, 1993 Caribbean cruise involving $20,470 paid by a group of 46 people, only half of whom received tickets for the cruise; the same April 24, 1993 Caribbean cruise involving $13,625 paid by a group of 25 people, only 12 of whom received tickets; an April 24, 1993 Costa Cruise Line cruise involving $32,483 paid by a group of 55 people, only 16 of whom received tickets for that cruise (defendant told that group she would refund money only to individuals who had not signed complaints against her with the Illinois Attorney General's Office or the local police); an April 25, 1993 Norwegian Cruise Line cruise involving payment of $89,550 by a group of 150 people, several of whom did not receive tickets; an April 25, 1993 Regency Cruise Line cruise involving counterfeit checks and unauthorized credit card charges; a May 9, 1993 Sea Wind cruise for a group of 66 people, only 10 of whom received tickets; a July 11, 1993 Caribbean cruise involving $53,545 paid by a group of 99 people, most of whom never received tickets from defendant; an August 20, 1993 Royal Majesty cruise involving $23,715 paid by a group of 36, none of whom received cruise tickets from defendant; a November 14, 1993 Dolphin Line Caribbean cruise involving $13,753 paid by a group of 21 people, none of whom received tickets from defendant (several other groups on this cruise suffered similar fraudulent schemes by defendant); and an August 5, 1993 cruise to Greece involving a group of 48 people, none of whom received tickets from defendant.

These 1993 activities following defendant's December 1992 discovery that an injunction prohibited her from engaging in "travel promotion" activities, involved using numerous false names to conceal the fraudulent schemes; using numerous counterfeit cashier's checks; and using customers' credit card accounts to charge thousands of dollars of unauthorized travel expenses or debts owed by defendant to various cruise lines, travel agencies, and airlines (for example, a customer would charge one ticket on a cruise and get a bill for four tickets).

As a further example of the fraudulent conduct during 1993, the PSR describes the plight of six senior citizens who had arranged through defendant to go on an April 24, 1994 cruise. These six complained directly to defendant about not receiving tickets or a refund, so on April 25, 1993 at 5:00 a.m., defendant telephoned this group and said they could get onto a different cruise if they could make an airline flight to Miami departing at 11:30 that morning. Defendant hand-delivered the airline tickets to the group, and they flew to Miami. Upon arrival at the cruise ship, however, they found that no reservations had been made for them. They telephoned defendant (who was using a false name with the cruise line) and she directed them to spend the night at the Port Inn in Miami; unfortunately, no such hotel existed. The six senior citizens were forced to rent a van and drive back to Chicago.

Defendant relies on *United States v. Linville*, 10 F.3d 630 (9th Cir.1993), stating that the enhancement under U.S.S.G. § 2F1.1(b)(3)(B) should not be used "where a defendant knew or was told by someone in authority that what she was doing was illegal," and instead should be limited to the "relatively unusual cases where someone violated a specific court or agency order or adjudication." *Linville*, 10 F.3d at 633. In *Linville*, however, the court was concerned that defendant's violation of an informal administrative warning (a "warning of violation") did not fall within the Guideline's description of "administrative order, injunction, decree, or process." *Linville*, 10 F.3d at

632–33. Here, there is no question that the injunction issued by the Circuit Court of Cook County, Illinois, is considered a judicial injunction under the Guideline. See *Michalek*, 54 F.3d at 332 (distinguishing a violation of a bankruptcy order from the administrative warning in *Linville*).

The district court had substantial evidence to support the two-level enhancement under U.S.S.G. § 2F1.1(b)(3)(B), and no clear error occurred. We AFFIRM the district court judgment.