In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-3576

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROBERT E. STOCHEL,

*Defendant-Appellant.*

Appeal from the United States District Court for
the Northern District of Indiana, Hammond Division.
No. 2:16CR30-001 — **James T. Moody**, *Judge.*

ARGUED APRIL 20, 2018 — DECIDED AUGUST 27, 2018

SYKES and BARRETT, *Circuit Judges*, and DURKIN, *District Judge.**

SYKES, *Circuit Judge*. An Indiana judge appointed Robert Stochel as receiver for Tip Top Supermarkets, Inc., while its proprietors were embroiled in protracted litigation. Over several years Stochel stole more than $330,000 from the

_____

* Of the Northern District of Illinois, sitting by designation.

receivership. After draining its coffers, Stochel evaded detection by diverting funds from other sources to pay the receivership's bills. But the scheme was unsustainable. As the litigation and receivership were winding down, the principals suspected that something was amiss and asked the state court to appoint an independent auditor. The judge granted the request and ordered Stochel to turn over the receivership's files. To delay the day of reckoning, Stochel filed a motion to vacate the order, falsely stating that the receivership had sufficient funds to pay the auditor and claiming that he needed more time to assemble the records. This brought a brief reprieve, but the judge soon realized it was a con and removed Stochel as receiver. Not long after, the auditor uncovered the fraud.

A federal grand jury indicted Stochel for mail fraud. *See* 18 U.S.C. § 1341. The factual basis for the charge was Stochel's motion, which he had mailed to the court; the indictment alleged that the motion perpetuated the fraudulent scheme by delaying the detection of Stochel's embezzlement. A jury found him guilty, and the district judge imposed a sentence of 24 months in prison.

Stochel challenges the sufficiency of the evidence to support his conviction. He also contests three of the judge's sentencing determinations: (1) the denial of credit for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a); (2) the loss-amount calculation, *see id.* § 2B1.1(b)(1)(G); and (3) the application of a two-level enhancement for violating a judicial order, *see id.* § 2B1.1(b)(9)(C). We affirm across the board. There was plenty of evidence to convict Stochel of mail fraud, and the judge's sentencing rulings were sound.

## I. Background

The Schwartz family established the Tip Top Supermarket in Gary, Indiana, in the 1950s. Years later brothers Alan and Maurice Schwartz came to own the grocery store through a corporation called Tip Top Supermarkets, Inc. Eventually the siblings had a falling-out and the collaboration turned sour. In 1987 Maurice sued Alan in Indiana state court alleging various financial improprieties, and Alan responded with similar accusations. The court appointed a receiver to oversee the corporation while the litigation was under way.

Tip Top's first receiver died in early 1999, and the judge appointed Stochel to replace him. Under the appointment order, Stochel had authority to "assemble and marshal" Tip Top's assets and was required to "report his actions to the [c]ourt" and "remain subject to the further order and directions of the [c]ourt." Stochel admits that the appointment order required him to report the receivership's expenses and to secure the court's approval before withdrawing corporate funds.

Stochel flagrantly disregarded these instructions and instead raided the receivership. By March 2004 he had zeroed out its bank account, stealing $331,840 for his personal use. He then went to extraordinary lengths to cover up the embezzlement. Whenever the Schwartz brothers requested a disbursement from the receivership, Stochel transferred money from elsewhere to hide the shortfall. Alan and Maurice were none the wiser. These call-and-response transactions continued through November 2006, totaling approximately $216,000 in payments of genuine receivership

expenses. Stochel made no further disbursements thereafter, and he closed the receivership account in March 2010.

Stochel also made numerous fraudulent representations to the state court to conceal his theft. In 2008 the court issued a notice that the Tip Top litigation was concluding and the case would be dismissed. Stochel objected and promised "to file a lengthy update and report regarding all pending matters and … assets within the next 30 days." That deadline came and went with no report. The court repeatedly ordered Stochel to provide an accounting over the next two years, but he obstructed at every turn. Finally, Stochel submitted his report in September 2010. It was riddled with lies. Stochel claimed that the receivership had almost $230,000 in assets, and he requested $93,000 in compensation for his services. Unaware of the fraud, the court authorized the payment in March 2011.

Soon thereafter the scheme began to unravel. The parties balked at Stochel's accounting and asked the judge to appoint an independent auditor to review the receivership's finances. The judge did so in November 2011 over Stochel's vigorous and protracted objection. Stochel delayed several months longer by refusing to execute the auditor's engagement letter, but eventually the judge had had enough. On March 7, 2012, the judge instructed the clerk of court to hire the auditor and ordered Stochel to immediately turn over all receivership files. The day of reckoning was nigh.

Stochel made a last stand nonetheless. On March 12, 2012, he moved for "[r]elief from judgment or order" under Rule 60(B) of the Indiana Rules of Trial Procedure. Stochel served the motion on the parties and delivered it to the court by mail. The motion asked the court to vacate the March 7

order, falsely represented that the receivership had $8,000 to pay an auditor, requested more time to assemble the receivership's files, and asked the court to set a new auditing schedule. The judge granted the motion in part and ordered Stochel to deliver the receivership's records by April 23. Unsurprisingly, Stochel did not comply. Finally, on June 19 the judge vacated the award of receiver fees, removed Stochel as receiver, and appointed the auditor to take his place. The disarray in Stochel's records prevented a complete audit, but the auditor reported that the receivership account had been empty and closed for years.

On March 16, 2016, a grand jury indicted Stochel on one count of mail fraud. *See* 18 U.S.C. § 1341. The indictment alleged that Stochel mailed the Rule 60(B) motion "for the purpose of executing" the fraudulent scheme to steal the receivership's funds.   More specifically, the indictment charged that Stochel intended to "prevent[] the parties and counsel … from learning of his scheme by lulling them into a false sense of security." Stochel moved to dismiss the indictment as untimely. The judge denied the motion, and a jury found Stochel guilty after a three-day trial.[1]

The probation office prepared a presentence report, proposing an offense level of 23 under the Sentencing Guidelines. Three elements of this calculation are relevant here. First, the offense level included a twelve-level enhancement for an intended loss greater than $250,000. U.S.S.G. § 2B1.1(b)(1)(G). The probation office concluded that Stochel intended a loss of $331,840, representing the full amount he

---

[1] The case was tried twice. The first trial ended in a mistrial when the jury could not reach a verdict.

drained from the receivership. Second, the PSR applied a
two-level enhancement for violating a "prior, specific judi-
cial or administrative order," *id.* § 2B1.1(b)(9)(C), because
Stochel had defied the state court's order to "report his
actions" and "remain subject to the further order and direc-
tions of the [c]ourt." Third, the PSR recommended against a
two-point reduction for acceptance of responsibility because
Stochel contested his guilt at trial. *Id.* § 3E1.1(a).

Stochel objected to all three sentencing recommenda-
tions. He claimed he should get credit for accepting respon-
sibility because he never denied stealing from the
receivership but only challenged the timeliness of the
charge. He also maintained that the intended loss amount
was less than $250,000 because he was entitled to offsets for
the receivership expenses he paid with diverted funds and
for the value of the services he provided. Finally, Stochel
argued that the two-level enhancement for violating a
judicial order was improper because the state-court order
did not qualify as a "specific" order under the Guidelines.

The judge overruled Stochel's objections, adopted the
PSR's recommendations, and calculated an advisory sen-
tencing range of 37 to 46 months in prison. The judge then
opted for a below-Guidelines sentence of 24 months based
on certain mitigating factors. This appeal followed.

## II. Discussion

Stochel raises two sets of claims on appeal. He first ar-
gues that the evidence presented at trial was insufficient to
convict him of mail fraud. Our review of that claim is ex-
ceedingly limited. "A challenge to the sufficiency of the
evidence can be successful only when, after viewing the

evidence in the light most favorable to the prosecution, we nevertheless are convinced that no rational jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Caguana*, 884 F.3d 681, 687 (7th Cir. 2018).

Stochel also renews his challenges to the three sentencing rulings described above. On these issues we review the judge's factual findings for clear error and his legal conclusions de novo. *See United States v. DeLeon*, 603 F.3d 397, 406 (7th Cir. 2010) (acceptance-of-responsibility enhancement); *United States v. Moose*, 893 F.3d 951, 954 (7th Cir. 2018) (loss calculation); *United States v. Parolin*, 239 F.3d 922, 928 (7th Cir. 2001) (judicial-order enhancement).

## A. Sufficiency of the Evidence

Stochel's challenge to the sufficiency of the evidence is confusingly mixed with an argument about the indictment's timeliness. He argues that his March 12, 2012 Rule 60(B) motion was not mailed in furtherance of the fraudulent scheme, which (he says) ended years earlier—either in March 2004 when he last withdrew receivership funds for his personal use or at the latest in November 2006, the last time he deposited money to cover up the fraud. Either way, he insists, the indictment came long after the statute of limitations expired.

That's incorrect. For mail fraud "the five-year statute of limitations begins to run from the date of mailing of the fraudulent information." *United States v. Tadros*, 310 F.3d 999, 1006 (7th Cir. 2002). Stochel mailed the Rule 60(B) motion on March 12, 2012, and he was indicted on March 16, 2016, so clearly there's no statute-of-limitations problem. Indeed, Stochel's argument about untimeliness tacitly admits as

much. He views the Rule 60(B) motion as *irrelevant* to the scheme.

That's really an attack on the sufficiency of the evidence. To convict a defendant of mail fraud, the government must prove: "(1) a scheme to defraud; (2) an intent to defraud; and (3) use of the mails … in furtherance of the scheme." *United States v. Leahy*, 464 F.3d 773, 786 (7th Cir. 2006). Stochel concedes the first two elements; his untimeliness argument is in effect a challenge to the third element. He starts the clock in 2006 (or even earlier, in 2004) instead of 2012 because he denies that the Rule 60(B) motion had anything to do with his scheme. In other words, Stochel claims he was not timely indicted for mail fraud because the government never proved that he sent a fraudulent mailing within the relevant timeframe. That's a textbook challenge to the sufficiency of the evidence.

And the challenge falls flat. The Supreme Court has held:

> Mailings occurring after receipt of the goods obtained by fraud are within the statute if they were designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely than if no mailings had taken place.

*United States v. Lane*, 474 U.S. 438, 451–52 (1986) (internal quotation marks omitted). So a mailing sent "long after the scheme" concludes still furthers the fraud if it was intended to "preserve[] the appearance of propriety" and keep "everything copacetic." *United States v. Mankarious*, 151 F.3d 694, 705 (7th Cir. 1998). Put another way, a mailing furthers a

fraudulent scheme if it was designed to "facilitate conceal-ment or postpone investigation of the scheme." *United States v. O'Connor*, 874 F.2d 483, 486 (7th Cir. 1989) (quotation marks omitted).

That describes Stochel's Rule 60(B) motion to a T. A jury could reasonably find that Stochel filed the motion to delay the investigation and discovery of the fraud. It's also reason-able to conclude that Stochel was trying to convey the impression that all was well by falsely representing that the receivership had sufficient funds to pay an auditor and that he simply needed more time to assemble the receivership's records. *See Mankarious*, 151 F.3d at 705. Finally, the motion could be seen as part of Stochel's ongoing effort to facilitate concealment of the scheme. *See O'Connor*, 874 F.2d at 486. There's good reason to think that he asked for more time *and* a heads up on the auditing schedule because he wanted to know how long he had to plot his next move. The jury was entitled to make any and all of these inferences. The evi-dence was easily sufficient to convict Stochel of mail fraud.

## B.  Acceptance of Responsibility

A defendant qualifies for a two-point reduction in his of-fense level under the Guidelines if he "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). Proceeding to trial is not automatically disqualify-ing, but a defendant cannot contest "an essential factual element of guilt" and expect to get acceptance-of-responsibility credit. *United States v. Hendricks*, 319 F.3d 993, 1009 (7th Cir. 2003); *see also* U.S.S.G. § 3E1.1 cmt. n.2 (ex-plaining that a defendant can go "to trial to assert and preserve issues that do not relate to factual guilt"). Stochel insists that he's entitled to credit for accepting responsibility

because he did not deny that he swindled the receivership and engaged in a scheme to cover it up, but instead contested only whether the Rule 60(B) motion was in furtherance of the scheme.

That argument fails for reasons we've already discussed. Whether the use of the mails was "in furtherance of the scheme" is the third element of the crime. *Leahy*, 464 F.3d at 786. Stochel's decision to pick that fight is fatal to his claim for acceptance-of-responsibility credit; defendants don't get credit for two-thirds of a contrite heart. *See, e.g.*, *United States v. Williams*, 202 F.3d 959, 963 (7th Cir. 2000).

## C. Loss Amount

The base offense level for fraud offenses depends in part on the loss amount, *see* U.S.S.G. § 2B1.1, and that, in turn, depends on the monetary loss the defendant either intended or actually caused, whichever is greater, *see United States v. Williams*, 892 F.3d 242, 250 (7th Cir. 2018). In the context of mail fraud, the lodestar of intended loss is "the amount placed at risk by the scheme." *United States v. Durham*, 766 F.3d 672, 687 (7th Cir. 2014). The analysis starts there "because the purpose of fraud statutes … is to punish the scheme, not simply the unlawful taking of money or property." *United States v. Mei*, 315 F.3d 788, 792 (7th Cir. 2003).

The parties agree that Stochel drained $331,840 from the receivership, zeroing out its bank account and thus necessarily putting that amount at risk. The central question is how to account for the $216,000 in receivership expenses he paid with funds he deposited to cover up his embezzlement. We have held that "[l]oss cannot include the value of services a defendant *legitimately* performed for the victims of

his fraud." *United States v. Swanson*, 483 F.3d 509, 513 (7th Cir. 2007) (emphasis added). Stochel admits that his later deposits to cover disbursements were meant to conceal his fraud, but he claims they count as "legitimate" payments nonetheless.

This argument centers on the government's concession that the $216,000 in cover-up funds went toward genuine receivership expenses. To Stochel's mind that makes the payments per se legitimate, entitling him to an offset. This reasoning misses a key element in the analysis. Nominally legitimate payments are not offset against intended loss when they are "intertwined with and an ingredient of [an] overall fraudulent scheme." *United States v. Marvin*, 28 F.3d 663, 665 (7th Cir. 1994). The reason why is easy to grasp: "[T]he fraudster's costs shouldn't be deducted any more than the costs of a burglar's tool should be deducted in determining the loss suffered by the victim of the burglary." *United States v. Spano*, 421 F.3d 599, 607 (7th Cir. 2005) (citation omitted). On this understanding, Stochel's payments to cover his tracks were essentially the cost of perpetuating the scheme. He admits that they were designed to lull his victims so that he could avoid detection.

Stochel responds that he was nevertheless entitled to an offset because the victims received a substantial financial benefit from the payments. Our cases support the judge's decision to reject this argument. In *United States v. Lane*, 323 F.3d 568, 585 n.4 (7th Cir. 2003), we refused to credit "gains made by successful investors in a fraudulent investing scheme, as those gains are only intended to lure and defraud other investors." Stochel's payments served a similar purpose. Like a Ponzi schemer, he stole receivership

funds and covered his tracks with money from other sources for the purpose of throwing the Schwartz brothers off his scent and keeping the scam alive. We have affirmed the denial of an offset in similar cases. *See, e.g.*, *United States v. Peugh*, 675 F.3d 736, 742 (7th Cir. 2012), *rev'd on other grounds*, 569 U.S. 530 (2013), *opinion reinstated in part*, 527 F. App'x 554 (7th Cir. 2013); *United States v. Powell*, 576 F.3d 482, 497 (7th Cir. 2009).

Stochel's second claim doesn't fare any better. He insists that he's entitled to credit for the value of the services he provided for the receivership. This argument is facially implausible. The state judge concluded that Stochel was not entitled to *any* payment for his services, and the district judge reasonably relied on that decision. Moreover, even if we considered the claim anew, Stochel has nothing to back it up. He does little more than proclaim an entitlement to an offset of more than $127,000 for his services as receiver. Nowhere does he explain what services he provided and how much they were worth. The judge was right to deny this offset.

**D. Judicial Order**

The Guidelines call for a two-level increase in the offense level "[i]f the offense involved … a violation of any prior, specific judicial or administrative order." U.S.S.G. § 2B1.1(b)(9)(C). The order in question must instruct the defendant "to take or not to take a specified action." *Id.* § 2B1.1(b)(9) cmt. n.8(C); *see also United States v. Pentrack*, 428 F.3d 986, 990 (10th Cir. 2005) (holding that a judicial order must "provide the defendant with adequate notice of the prohibited conduct"). Here, the state court ordered Stochel to "report his actions to the [c]ourt" and "remain

subject to the further order and directions of the [c]ourt." Stochel nonetheless raided the receivership and engaged in an elaborate scheme to cover up the embezzlement, ignoring several court directives along the way. For this conduct the judge added two points to the offense level.

Stochel argues that the enhancement was improperly applied because the state-court order was not specific enough—that is, it did not describe the "specified action" he was supposed to either undertake or forgo. That's doubly incorrect. The order instructed Stochel to "marshal" Tip Top's assets and then "report his actions to the [c]ourt." If nothing else, that required Stochel to notify the court when he withdrew funds from the receivership; he obviously did not comply. Stochel admits as much, and that concession would resolve any ambiguity even if we were inclined to find it. *See United States v. Gist*, 79 F.3d 52, 54 (7th Cir. 1996) (holding that a judicial order was sufficiently specific when the defendant "admitted the breadth of the injunction").

The instruction to "remain subject to the further order and directions of the [c]ourt" is similarly clear. Stochel repeatedly violated specific directions from the court as the scheme was unraveling. He blew through court-imposed deadlines, thwarted the court's efforts to appoint an auditor, and stymied the court's efforts to obtain the receivership's files. The enhancement was properly applied.

AFFIRMED.